JACOB A. WAGNER, Appellee, v. NORTHERN SECURITIES COMPANY,
Appellant.

No. 44001.

JUNE 21, 1938.

OPINION ON REHEARING MARCH 7, 1939.

REHEARING DENIED JUNE 23, 1939.

Hughes, O'Brien & Hughes, for appellee.

Leland S. Forrest, for appellant.

MITCHELL, C. J.—Rehearing having been granted in this case, the original opinion filed, and reported in 280 N. W. 472 is hereby withdrawn.

On December 6, 1919, Jacob Wagner the owner of Lot 5, Block 1, J. C. Savery's Park Addition to the City of Des Moines, entered into a written lease with Harry Hansen and Clifford DePuy, renting to them the described real estate for a period of ninety-nine years at a fixed rental. On August 26, 1921, the lessees assigned the lease to the Northern Securities Company.

Under the terms of the lease, the lessees were obligated to erect a building on the property costing not less than $50,000, and the lessor agreed to join in a mortgage to the amount of 50% of the cost of the building, but lessor would not be personally liable on the note. The building was completed about the year 1924. As provided by the lease a mortgage for $40,000 signed by Jacob Wagner and the Northern Securities Co. and secured by the real estate and the building thereon was executed by the Equitable Life Insurance Company of Iowa. By its terms it was due October 1, 1927. Later by written agreement this mortgage was extended to October 1, 1932.

The building erected on lot 5 was a part of an apartment house, part of which was built on lot 4, it being operated as a single unit. The part of the apartment house located on lot 4 was incumbered by a first mortgage for $110,000, and there was a mortgage for $50,000 covering both lots and the entire building.

In August 1927 Canfield Bros., a creditor, brought suit to recover judgment on certain bonds which were past due. They also sought foreclosure of the mortgage on lot 4 and the appointment of a receiver for the property covered by the mortgage. The court appointed R. A. Crawford receiver. He was directed to operate the apartment located on the two lots as one building. On November 20, 1933, six years after the commencement of the Canfield suit, the court entered a decree foreclosing the mortgage on lot 4 and ordered the premises sold. This decree appointed a purchasing committee to purchase the property at sheriff's sale and directed the receiver "on and after the sale to deliver the property to the purchaser and make final report of the receivership". The sale was had on the 20th day of February and the receiver, Mr. Crawford, ceased to operate the entire property on that date.

On the 29th of December, 1933, Wagner commenced this action by filing a petition praying for the appointment of receiver to take charge of the property, to wit: lot 5 and for general equitable relief. On the same day a temporary receiver was appointed. On the 15th day of March, 1934, the Northern Securities Company answered alleging among other things "that no legal right existed in the plaintiff at the time of the commencing of this action to ask for a receiver". There was a trial and the temporary receiver was made permanent, the report of the receiver approved and he was directed to sell certain personal property. Later the Northern Securities Company filed a motion to vacate this order and again evidence was offered. The court overruled the motion, and the Securities Company has appealed.

The main contention of the appellant as set forth in its brief is "that the court was without jurisdiction to appoint a receiver", and that "the petition fails to state any cause of action other than the request for a receiver, and the appointment of a receiver is merely ancillary to a main cause of action and is not an independent remedy, and can be invoked only in pending suits to obtain the relief the court can grant in a cause of action to which a receiver is ancillary, and the plaintiff's petition fails to show any cause of action except that he wants a receiver".

█ It is the generally accepted doctrine, that in the absence of statutes to the contrary, that a receiver cannot be appointed except for the purpose of preserving property involved in litigation pending the final outcome thereof; and as a result thereof a receiver can only be ancillary to some other or primary relief demanded. In section 51 of Clark, on Receivers, in reference thereto, we find the following statement:

"The appointment of a receiver being an interlocutory decree is, therefore a temporary expedient, and provisional to some other or final determination of the matter by the court. It is only ancillary and auxiliary to the main action, except in the rare case of lunacy or infancy.

"It is not the office of a court of Equity to appoint receivers as a mode of granting ultimate relief."

█ There is no claim on the part of the appellee that there is any special statutory provision, and therefore we must turn

to the petition filed to ascertain whether a cause of action in equity is pleaded that would justify the appointment of a receiver.

The petition is in twelve counts. It recites plaintiff's ownership of the real estate, that the Northern Securities Company is an Iowa corporation and that R. A. Crawford has since 1927 been acting receiver of said corporation. That the mortgage covering lot 4 has been foreclosed, and that the lot with the building thereon has been ordered sold at sheriff sale on or about the 20th day of January, 1924, and when sold the receiver will have no further charge or possession of said premises. It then alleges that a lease was entered into for lot 5 for 99 years and attaches a copy of the lease.

Paragraph 4 recites the agreement to pledge the ground and that in compliance with said promise of the lease a $40,000 mortgage was placed on the building and property, and that it became due on or about October 1, 1932, and that the defendant company and receiver are in default on the principal and interest.

Paragraph 5 of the lease is as follows:

"Lessor is hereby given, in addition to the lien given by law, a lien upon the leasehold estate hereby created and rents due lessees from any sub-tenant, to secure the performance of the lessees' obligation hereunder; and the payment of the lessor of all rent or any amounts due lessor, hereunder, or damage sustained by lessor because of any breach of this lease, and on account of any money advanced by lessor to protect lessor's rights in and to said premises, caused by the failure of the lessees to strictly comply with all of the terms and conditions in this lease. Lessees shall pay to lessor all cost and expenses incurred in the enforcement of the provisions hereof, and attorney fees, for which the lessor shall have a like lien."

The petition then alleges that the property can be operated separately, that it has been in receivership for six years, that large amounts have been collected from that part of the building located on lot 5, but that no effort has been made to discharge the mortgage indebtedness. That under the lease the plaintiff is entitled to collect all rents and to apply the same upon said indebtedness and has notified the receiver of his purpose so to do.

It then alleges that the lease has run for fourteen years,

that the building is becoming old, run down, depreciated and obsolete, and that plaintiff's security is gradually depreciating.

Paragraph 12 states that the Northern Securities Company is insolvent, wholly unable to pay its debts or any part of them. It then prays for a receiver and for general equitable relief.

What is the relief sought by the petition, is it simply the appointment of a receiver? If it is, of course the appellee cannot prevail.

He alleges that the mortgage due to the Equitable Life Insurance Company in the amount of $40,000 and which is a lien upon his property is past due. This is not denied, and the evidence shows that shortly after the filing of the petition in this case the Equitable mortgage was foreclosed. He recites the provision of the lease which gives him an additional lien upon the rents due lessee from any subtenants; that the rentals being collected from the subtenants are being used for other purposes than in payment upon the mortgage upon appellee's property. It is the foreclosing of his lien, given to him by the lease, against the subtenants that he was desirous of accomplishing by this suit. True he does not use the word foreclosure; if he had no doubt we would not be confronted with this case and the writer of this opinion would have escaped the job of going through the long, but very able, briefs filed by counsel for both sides. Equity does not deal in technicalities, but rather it seeks to ascertain the true intent of the pleading filed. All that the appellee is seeking to do is to enforce the express provision of a legal contract and to preserve the rents and profits of his own real estate.

But the appellant claims that the prayer of the petition only sought the appointment of a receiver. Again the pleading is not as clear as it might have been, but in addition to the appointment of a receiver it prays for general equitable relief.

In McCarthy, on Iowa Pleading, section 73, the rule is stated:

"No judgment or relief can be granted by the court which is not included within the issues and prayed for in the petition, and it is error to grant a judgment or decree different from that asked in the petition and not within the pleaded facts of the case, or to render a judgment against a defendant against whom no prayer for relief is made.

"In an equity case the prayer should be broad enough to

cover all the relief to which a party is entitled by the averments of the pleading. It is advisable to add in equity cases a general prayer for relief, which may be in the following customary form: 'And for such other and further equitable relief as may be adjudged just in the premises.'

"While under such a general prayer the court cannot grant relief or make a decree not justified by the facts pleaded, yet relief may be granted different and in addition to that asked in the prayer, if warranted by the facts pleaded. In an action in equity a money judgment may be given under a prayer for general relief even though no specific demand is made therefor. In fact under a prayer for general equitable relief, a party is entitled to any relief in line with the allegations of the petition and sustained by the proof.''

In Lockhart v. Leeds, 195 U. S. 427, 25 S. Ct. 76, 78, 49 L. Ed. 263:

"All pleadings must be construed reasonably, and not with such strictness as to refuse to adopt the natural construction of the pleadings because a particular fact might have been more distinctly alleged, although its existence is fairly, naturally, and reasonably to be presumed from the averments made in the pleading.

\* \* \*

"There is nothing in the intricacy of equity pleading that prevents the plaintiff from obtaining the relief under the general prayer, to which he may be entitled upon the facts plainly stated in the bill.''

In Minnesota Mut. Inv. Company v. McGirr, 8 Cir., 263 F. 847, at page 856:

"The pleadings are very crude, but there is a prayer for general relief, and the court having jurisdiction may grant any relief consistent with the pleadings and the evidence.''

In American Trading & Storage Co. v. Gottstein, 123 Iowa 267, at page 269, 98 N. W. 770, 771, 101 Am. St. Rep. 319, this court said:

"It seems to be well settled under the authorities that a prayer for general relief in a complaint in equity will sustain a personal judgment. Iler v. Griswold, 83 Iowa 442, 49 N. W.

1023; Thomas v. Farley Mfg. Co., 76 Iowa 735, 39 N. W. 874. Thus, in Cushman v. Bonfield, 139 Ill. 219, 28 N. E. 937, it is held that a bill for the specific enforcement of a contract, which also contains a prayer for general relief, will support a money decree, although the specific relief asked cannot be given. And to the same effect are Gibbs v. Davies, 168 Ill. 205, 48 N. E. 120, and Penn v. Folger, 182 Ill. 76, 55 N. E. 192. We think there can be no doubt of the power of the Illinois court, as a general principle of equity practice, to enter, as it did, personal judgment for the balance of the indebtedness of defendant to the complainant after the application in discharge of complainant's lien of the amount realized by judicial sale of the property subject to the lien.''

Thus we find that the better weight of authority is that in an equity case under a prayer for general equitable relief, any relief may be granted consistent with the facts alleged and proved in the petition. So in the case at bar the facts alleged and proof offered show that in addition to the appointment of a receiver, the appellee sought the foreclosure of the lien given him by the lease upon the rent due from the subtenants.

Some other questions are raised. All have been given consideration. It necessarily follows that the judgment and decree of the lower court, must be and is affirmed.—Affirmed.

HAMILTON, STIGER, SAGER, HALE, BLISS, OLIVER, and MILLER, JJ., concur.