Chicago, Rock Island & Pacific Railway Company et al., Appellants, v. Pearl City Fuel Company et al., Appellees.

**QUIETING TITLE:** Proceeding and Relief—Scope of Inquiry—
1  **Rights of Occupying Claimant.** An occupying claimant may not have his rights adjusted in the decree which quiets title, the first being at *law,* the latter in *equity.* Much less has the court power, on the sole issue as to who owns the property, to enter a decree which provides for the appraisement of the improvements, and which, in its last analysis, compels the owner of

the real estate, at the option of the defeated claimant, *to buy the improvements.*

PRINCIPLE APPLIED:   See No. 2.

JUDGMENT:   Conformity to Pleadings, Etc.—Quieting Title—Occupying Claimant's Act.   A judgment or decree must conform to the pleadings.

PRINCIPLE APPLIED:   Plaintiff brought action to quiet title.   Defendant countered with a plea that he owned the property, (a) by adverse possession under color of title, and (b) by estoppel on plaintiff because of plaintiff's conduct attending the erection of certain improvements on the real estate.   No issue was raised as to the value of the real estate or the improvements.   The decree entered (1) was for plaintiff, and (2) provided that appraisers should be appointed; that the improvements should be appraised; that defendant should have the double option to remove the improvements or to take a personal judgment against plaintiff for the value thereof.   *Held*, the latter portion of the decree was erroneous, (1) because not conforming to the pleading, and (2) because confusing strictly legal and equitable remedies.

ACTIONS:   Nature and Form—Legal and Equitable—Decreeing Unauthorized Remedy.   A strictly and exclusively *legal* remedy may not be applied in an equitable proceeding, especially in the absence of any pleading.

PRINCIPLE APPLIED:   See No. 2.

*Appeal from Muscatine District Court.*—Wm. Theophilus, Judge.

Wednesday, May 16, 1917.

Action in equity to quiet title to a portion of the right of way of plaintiff railway company within the corporate limits of the city of Muscatine.   There was a decree quieting in plaintiffs the title to all the real estate involved in the suit.   Jacob Grimm is the grantee of one William G. Block, and in the conveyance, Block attempted to convey the real estate in dispute, which would include the buildings thereon, to Grimm.   The decree rendered herein, after quieting title in plaintiffs, made a finding of fact that Block

made valuable improvements upon a part of the said right of way as to which title was quieted in plaintiff, and that, in erecting such improvements, Block was under the impression that he had a right to construct the same; that, since the plaintiff railway company had allowed and suffered the improvements to be erected, Block and his grantees were entitled in equity either to the value of the improvements or the right to remove the same, and defendants were given six months to find and prepare a new place of business, and for removal thereto. Further provisions of the decree are referred to in the opinion. From so much of the decree as directs a personal judgment to be rendered against the plaintiff upon the report of the commissioners, and from the alleged judgment so entered, the plaintiffs appeal.—*Reversed and Remanded.*

*J. G. Kammerer, F. W. Sargent* and *J. G. Gamble,* for appellants.

No appearance for appellees.

PRESTON, J.—1. We have not been favored with an argument for appellees. The notice of appeal recites that the appeal is from the judgment and decree rendered in said cause August 16, 1915, and from the judgment on said decree which was entered on September 11, 1915. From the record presented, it is doubtful whether any judgment was rendered on September 11, 1915. The original decree provided for the appointment of appraisers and that they should report to the court. Their report is as follows:

1. QUIETING TITLE: proceeding and relief: scope of inquiry: rights of occupying claimant.

"Report of Appraisers.

"State of Iowa, } ss.
"Muscatine County, }

"To the district court of said county: We, the undersigned appraisers, appointed as set forth in the foregoing

commission to value and appraise certain improvements, etc., therein described, erected by the defendants upon aforesaid premises of the plaintiff, and having examined the premises, upon our oath do appraise the said improvements as follows, to wit: The improvements situated on the premises hereinbefore described at the sum of $2,486. We also fix the rental value of said improvements for six months at the sum of $99.44.

"Given under our hands, this 11th day of September, A. D. 1915.

"J. E. Howe   )
"Anton Bersch)  Appraisers.
"Geo. Maurer  )

($2.20.
"Fees  ($2.20
($2.20.

"Filed September 11, 1915, R. G. Tipton, Clerk.

"Judgment Entry, See Minute Book 'Y' at page 337."

This is all the record we find as to any personal judgment against plaintiffs, and we think it does not show a judgment. However this may be, we shall see later in the opinion that, if a personal judgment was entered as ordered in the original decree, it was unauthorized under the statutes in such a case as this. But the appeal was from that part of the original decree ordering a judgment. In this regard, the decree provides:

"The defendant Jacob Grimm is entitled either to remove the improvements erected by him or his grantor, the defendant William G. Block, upon the said premises, or to be paid the fair and reasonable value thereof, at his option—it appearing to the court that part of said improvements consists of concrete work and cannot be removed without great damage or total loss; and, if the said defendant Grimm elects to take the value of said improvements in lieu of removing the same, he shall file with the

clerk of this court his written statement to that effect on or before the 8th day of September, 1915, and a failure so to do shall be held to indicate that he has elected to remove such improvements.

"In case the defendant Jacob Grimm shall elect to take the value of said improvements as stated, it is ordered that J. E. Howe, Anton Bersch and George Maurer, three good, competent, disinterested, resident citizens of the city of Muscatine, be, and are hereby, appointed to appraise and fix the present cash market value of the said improvements (after viewing the same), which have been erected by the defendants or any of them upon the said premises of the plaintiff, and that such appraisers file their report of such appraisement on or before the 15th day of September, 1915, and the clerk of this court shall issue to them a commission directing them so to do, and to take the usual appraisers' oath before proceeding in the premises. The said appraisers shall also fix the fair rental value for six months of the said improvements, and make such finding a part of their report to the court.

"The defendant Jacob Grimm, his heirs or assigns, are given the right to use and occupy the said improvements and the land on which the same are situated until the first day of March, 1916, and in case the said defendant Grimm shall elect to take the appraised value of such improvements in lieu of removing the same, he shall pay six months' rent, as fixed by such appraisers, for such use and occupance until March 1, 1916, and the said rental shall be deducted from the appraised value of the improvements fixed by said appraisers; and judgment shall be entered against the plaintiffs in favor of the defendant Jacob Grimm for the amount of such appraisal, less the six months' rental, as hereinbefore set forth, and the clerk is directed to enter the same on his records upon the filing of the report of such appraisement; and, if the plaintiffs shall

fail to pay the defendant Jacob Grimm the said appraised value of the said improvements on or before the first day of March, 1916 (in case he has so elected to take under his option), then the defendant Jacob Grimm, his heirs or assigns, shall have the right to use and occupy the said improvements and the land on which the same are situated, free and exempt of any rent, until the said appraised value, less the said six months' rental, shall have been fully paid by the plaintiffs; but the occupance of the said defendant Jacob Grimm, his heirs or assigns, shall be subject to the right of the plaintiffs as herein determined, and shall not ripen into a perfect title."

Thereafter, and on September 2, 1915, defendant Jacob Grimm filed his written election as follows:

"Comes now Jacob Grimm, defendant in the above entitled cause, and, without waiving any exception taken to the rulings of this court, but preserving his exception to all such rulings, including the final decree herein, and preserving his right to appeal from such rulings, and without prejudice because of this election to any of his rights herein, including his claim to the fee simple title to the real estate described in the answer and cross-petition of Jacob Grimm filed herein on March 23, 1915, or any part thereof, and in conformity with the decree of this court entered herein as of August 16, 1915, this defendant, Jacob Grimm, hereby elects to take the value of the improvements situated upon Lots 1 and 2 in Block 109 of the city of Muscatine, or that part of said lots described in the decree above mentioned, in lieu of his right to remove the same."

The defendants have not appealed, and the time has expired.

Appellants' first assignment of errors is that the court erred in rendering a money judgment in favor of defendant Jacob Grimm. The other assignments of error may be considered together; and they are that the court erred in pro-

viding for the appointment of appraisers to ascertain the value of the improvements and in providing for the entry of a money judgment in favor of defendant Grimm and of his election, because: (a) Such decree was without the issues raised by the pleadings; (b) there was no evidence that defendant Grimm had constructed said improvements —on the contrary, the evidence showed that such improvements were constructed by defendant Block, who asked no affirmative relief; (c) the defendant (plaintiff) has been denied a trial as in ordinary actions as to the value of the real estate and of such improvements; (d) there is no provision of law for the appraisement of value and entry of judgment, as required by the decree of the court in this cause.

As to the question presented in regard to whether the decree was without the issues raised by the pleadings as claimed by appellants. The defendant Block filed an answer and general denial. Defendant Grimm, however, filed an answer and cross-petition, in which he claimed under his conveyances the title to the land, and, among other things, admitted that plaintiff was the owner of that part of Lots 2 and 3 in Block 109 which is now occupied by the right of way of plaintiff company, as shown by plat attached to and made a part of the warranty deed from W. G. Block to Jacob Grimm, and by cross-petition alleged that he is the absolute owner in fee simple of all of Lots 1 and 2 in Block 109, except so much of said lots as is now occupied by the right of way of the plaintiff company, as shown by plat made a part of the warranty deed before named, to defendant; alleged that he and his grantors acquired title by purchase from the owners of said real estate, and that he and his grantors have been in actual, open, notorious, exclusive, continuous and adverse possession thereof under claim of right and color of title for more than 30 years. In another division of the cross-petition, he alleged that

the boundary lines between that part of said lots so owned by this defendant as above stated, and the right of way of the plaintiff, have been distinctly marked by the erection of permanent improvements upon the land so owned by this defendant, and said lines have been acquiesced in by said plaintiff for more than 20 years last past, and that plaintiff is estopped and barred by the erection of said improvements from having or claiming any right, title or interest in and to the real estate so owned by the defendant; and alleged further, in another division, that defendant and his grantors have built and erected valuable and permanent improvements upon said premises, which improvements were so built and erected with the knowledge of said plaintiff, and that the defendant will be greatly injured if he is compelled to remove such improvements, and that plaintiff is, therefore, barred and estopped from claiming any right, title or interest in or to the premises, and the prayer of his cross-petition is that his title in and to said lots be confirmed in defendant against the adverse claims of plaintiff, and that plaintiff be barred and estopped from having or claiming any right, title or interest in and to said premises adverse to defendant, and that the boundaries between the right of way of plaintiff and that part of said lots so owned by said defendant be established and confirmed, and for general equitable relief.

It will be seen from this that defendant Grimm was claiming title to the land itself, and set up the matter of the buildings and improvements as an estoppel against plaintiff from claiming title to the land. On this point, appellants contend that, in equity, relief granted must be consistent with the facts pleaded, and a judgment or decree different from that prayed is erroneous, citing *Bottorff v. Lewis,* 121 Iowa 27, 33; *Johnston v. Myers,* 138 Iowa 497, 500; and that, in equity, a decree must conform

2. JUDGMENT: conformity to pleadings, etc.: quieting title: Occupying Claimants' Act.

to the facts pleaded as well as the prayer of the petition, for the defendant is entitled to his day in court upon the issues joined, citing Section 3775, Code, 1897, and *Johnston v. Myers,* supra.

In addition to the pleadings before set out, the plaintiffs, in their answer to Grimm's cross-petition, allege:

"On information and belief, the plaintiff alleges the fact to be that the sheds described by defendant Grimm in his cross-petition were erected through oral permission on the part of the then officers of the plaintiff and its grantors to remove the same on request, and with full knowledge on the part of the grantors of the said defendant Jacob Grimm; that the said sheds and buildings were not on the property owned by the said grantors of Jacob Grimm, but were on the right of way and property of the plaintiff's grantors, and that the holding of said Jacob Grimm and his grantors has not been adverse to the plaintiff at any time, but has been under and subject to the title of the plaintiff and its grantors."

There is testimony upon this point, some of which will be referred to as briefly as may be. Witness Block testified, in part, that he saw the premises in 1902; that, at that time, there was a shell shed 80 feet long on the west side of the railroad tracks, and a little building 14 feet long on the east side; that the sheds were rebuilt the next year, and that they built two houses and a barn; that the barn is now located where it was originally located in 1903; that defendant Block went into possession of all the property except that occupied by the railway company by the tracks, and claimed to own all of it except what the railway company occupies with the tracks; that, in 1908, the sheds originally purchased were torn down and rebuilt; they were put on concrete foundations and floors, and a new office and new scale were also constructed, and the sheds that were built in 1908 are still on the premises; they cover

the same ground that the old shed did, and extend farther north and farther south and farther west; they were made larger. He says further:

"At the time we were rebuilding, the railway company furnished some of the dirt to fill the ground between the retaining wall and the side track on the west side. The floors and retaining wall are of a permanent character. The upper structure is frame and has a fireproof roof. In the construction of the sheds we spent about $1,800. The barn cost about $1,100 in 1902. The lots in question were not of great value; apart from the trackage, the real consideration I paid was $750, which included such improvements as there were on the ground."

Defendant Grimm testified:

"I claim title to all of Lots 1 and 2 in Block 109 outside of six feet of the center of both switches on both sides; I acquired title by warranty deed from Mr. Block in 1912. * * * The shed and barn were on the premises when I got them."

The decree of the trial court found the issues presented by the pleadings in favor of the plaintiff below, appellant here. Title to the real estate in controversy was quieted in the plaintiff, and the title was also confirmed, so that the decree determined the defense presented, based upon adverse possession, under color of title, and as based upon title because of equitable estoppel. Unless these defenses were determined adversely to defendants, the court wrongfully entered the decree quieting and confirming title in plaintiff. But this question is not now open, and is immaterial on this appeal because more than six months have elapsed since the rendition of the decree, and defendants have not attempted to appeal therefrom; so that it would seem that the questions involved in the determination of title to the real property are foreclosed. The de-

3. ACTIONS: nature and form: legal and equitable: decreeing unauthorized remedy.

fendant Block asked no affirmative relief.   His grantee, Grimm, one of the defendants, did ask relief, to the extent, and only to the extent, that his title be decreed paramount to that of plaintiff because of an alleged equitable estoppel. It seems that the court attempted to apply the provisions of the Code concerning the rights of occupying claimants.

2.   It is contended by appellants at this point that at common law there is no liability on the part of the owner of real estate for improvements made in good faith by an occupying claimant, and that the right to recover therefor is based upon the statute, and the claimant must bring himself within its provisions.   In support of this proposition, they cite *Lunquest v. Ten Eyck,* 40 Iowa 213.   And further, that the Occupying Claimants' Act provides a special remedy, and he who seeks to avail himself of it must bring himself within the statute and pursue the course therein indicated.   Sections 2964 to 2971, Code, 1897; *Lindt v. Uihlein,* 116 Iowa 48.   And see, as having a bearing, *Jefferson v. Rust,* 155 Iowa 133—137.   And that the occupying Claimants' Act does not contemplate the recovery of any personal judgment against the landowner, *Lindt v. Uihlein,* supra; *Dungan v. Von Puhl,* 8 Iowa 263.   See, also, *McCormick v. Dumbarton Realty Co.,* 156 Iowa 692, 695.

Appellants complain that they were denied a trial as to the value of the real estate and said improvements.   Sec. 2964, Code, 1897, provides:

"Where an occupant of real estate has color of title thereto, and in good faith has made valuable improvements thereon, and is afterwards in a proper action found not to be the owner, no execution shall issue to put the plaintiff in possession of the same, after the filing of a petition as hereinafter provided, until the provisions of this chapter have been complied with."

Sec. 2965, Code, 1897, provides:

"Such petition must set forth the grounds on which the

defendant seeks relief, stating as accurately as practicable the value of the real estate, exclusive of the improvements thereon made by the claimant or his grantors, and the value of such improvements. The issues joined thereon must be tried as in ordinary actions, and the value of the real estate and of such improvements must be separately ascertained on the trial."

Sec. 2966, Code, 1897, provides:

"The plaintiff in the main action may thereupon pay the appraised value of the improvements and take the property, but should he fail to do this after a reasonable time, to be fixed by the court, the defendant may take the property upon paying its value, exclusive of the improvements. If this is not done within a reasonable time, to be fixed by the court, the parties will be held to be tenants in common of all the real estate, including the improvements, each holding an interest proportionate to the values ascertained on the trial."

These statutes were not complied with. No such petition as contemplated by the statute was filed, and no issue was raised by the pleadings as to the value of the improvements and the real estate as contemplated by the statute, and there was no trial on that issue. We think the statute does not contemplate such an issue in the main action, before the determination of the title to the real estate. Such an issue in the main action would be premature, and the issue was not raised after the determination on the merits. Doubtless, such a petition could be filed thereafter, and probably, in the same action, because it has been held that the proceeding by the occupying claimant is ancillary to the main suit. *Chapman v. Barger,* 4 Dillon (U. S. Cir. Ct.) 557. Under the statute, the issues joined on the question as to the values must be tried as in ordinary actions, and thereafter, plaintiff in the main action may pay the appraised value of the improvements and take the property;

and if he fails to do this, the defendant may take the property upon paying its value, exclusive of the improvements. The decree in this case wipes out the "occupying claimant" remedy, and prevents a hearing to plaintiff on the question of the values of the property, and does not give the plaintiff the right to elect to take the improvements, but allows the defendant to elect to take the value thereof, without a hearing, and cuts the plaintiff off. In this, we think the trial court was in error, and that the personal judgment ordered in the decree, and the entry thereof, if judgment was entered, was without the issues and unauthorized, and that the plaintiff would be entitled to be heard in case such a petition as the statute contemplates had been filed.

It follows, then, that that part of the decree complained of is reversed, and the cause remanded for further proceedings in harmony with the opinion, if proper pleadings are filed.—*Reversed and Remanded.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.